UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN T. ERDMAN,

                Plaintiff,

v.                                          **DECISION AND ORDER**
                                                                 09-CV-125S

HSBC AUTO FINANCE f/ka/
HOUSEHOLD AUTO FINANCE,

                Defendant.

## I. INTRODUCTION

Plaintiff, Steven Erdman, commenced this action on January 1, 2009 in New York State Supreme Court, County of Erie. Defendant, HSBC Auto Finance ("HSBC"), removed the case to this Court on February 6, 2009. Erdman alleges claims for breach of contract, fraud, negligent and intentional infliction of emotional distress, and violations of New York General Business Law § 349 ("GBL § 349"). Jurisdiction is proper under 28 U.S.C. § 1332.[1] Presently before this Court is Defendant's Motion to Dismiss. For the following reasons, that motion is granted in part and denied in part.

## II. BACKGROUND

**A.    Facts**

Around July 25, 2002, Erdman purchased a Ford Escort from Al Maroone Ford in Williamsville, New York. (Amended Complaint ("Am. Compl.") ¶ 5; Docket No. 9.) He financed $10,584.90 of this purchase through HSBC and made timely payments until May of 2003, when he was injured and unable to pay. (Id. ¶¶ 5-7.) Subsequently, HSBC

---

[1] Plaintiff is a resident of the State of New York, Town of Hamburg, County of Erie. (Amended Complaint ¶ 1, Docket No. 9.) Defendant is a Delaware corporation with its principal place of business in California. (Amended Complaint ¶ 2.) Plaintiff has demanded over $75,000. (Docket No. 1-4.)

repossessed and sold the vehicle, leaving a balance of $7,956.76 (Id. ¶¶ 9-10.) In full satisfaction of this debt, HSBC agreed to accept $2,000, which Erdman undisputedly paid in full. (Id. ¶ 10.) However, according to Erdman, HSBC then sold his account (the $7,656.76 debt plus interest) to West Asset Management ("West"), who then sold the account to Sydney Acquisitions, LLC ("Sydney"), both debt collection agencies. (Id. ¶¶ 11-12.) Erdman was completely unaware of these events until, nearly four years later, he applied for a loan to purchase another vehicle and learned that his credit score was below 400. (Id. ¶ 15.) He attributed his low score to either West or Sydney (or both) falsely reporting the $7,656.76 as overdue and delinquent. (Id.) According to Erdman, he then contacted HSBC who told him that it "had no supporting documents on file, could do nothing about the situation, and that a suit letter would be forthcoming imminently." (Id. ¶ 16.)

In July of 2007, Sydney sued Erdman on the account, resulting in a default judgment against him totaling $10,607.17. (Id. ¶¶ 17-18.) This judgment was eventually vacated, but for over a year he was continuously "harassed" by creditors and his credit rating continued to suffer. (Id. ¶¶ 19-20.)

Erdman also claims that as a result of his poor credit rating, HSBC was able to "coerce" him into a "sub-prime," eighteen percent interest rate on his next vehicle purchase. (Id. ¶¶ 22-26.) He complains that he could not obtain financing from other creditors, and that upon contacting HSBC, it offered him an "accommodation," sending him to Superior Toyota of Pennsylvania where he could purchase a vehicle that HSBC would finance. (Id.) Erdman agreed to these terms but alleges that HSBC was able to "coerce"

2

him into such a deal with a high interest rate only because of its earlier misdeeds, which adversely affected his credit score. (Id.) What is more, according to Erdman, HSBC eventually "lost" two payments on this new vehicle, and he was again forced to endure unwarranted harassment via phone call, letter, and threat of repossession. (Id. ¶¶ 27-28.)

**B.     Procedural History**

After HSBC removed this action to this Court, Erdman filed an amended complaint on March 9, 2009. (Docket No. 9.) Four days later, HSBC moved to strike Erdman's amended complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, arguing that it was improperly filed because Erdman had not sought leave from this Court. (Docket No. 11.)  In turn, Erdman requested leave to file its amended complaint. (Docket No. 15.) On February 16, 2010, this Court denied HSBC's motion and denied Erdman's motion as moot, finding that Erdman properly amended his complaint after removal as a matter of course under Fed. R. Civ. P. 15(a). (Docket No. 32.)

### III.  DISCUSSION

**A.     Legal Standard**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim.  Fed. R. Civ. P. 8 (a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. __, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S.Ct. at 1945 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 129 S.Ct. at 1949. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Courts therefore use a two-pronged approach to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience

and common sense. Iqbal, 129 S.Ct. at 1950. First, statements that are not entitled to the presumption of truth — such as conclusory allegations, labels, and legal conclusions — are identified and stripped away. See Iqbal, 129 S.Ct. at 1950. Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief." Id.

**B.    Defendant's Motion to Dismiss**

Although HSBC does not dispute that it executed a contract with Erdman to satisfy his outstanding debt, it raises several defenses that it believes preclude liability. HSBC argues that some of Erdman's claims are preempted and barred by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et. seq. ("the Act"),[2] that his contract and emotional distress claims are legally deficient and time-barred, that his fraud claim is legally insufficient and fails to comply with pleading standards, and that it did not violate GBL § 349, which, it argues, it also time-barred.

**1. Breach of Contract**

Under New York law, an action for breach of contract requires proof of: (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) resulting damages. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). Despite HSBC's assertion that Erdman's contract claim is merely a disguised negligence claim, Erdman has sufficiently pled all the necessary breach of contract

---

[2] Erdman's initial complaint contained a cause of action against HSBC claiming violations of the Act, but he abandoned those claims in his amended complaint. Although some allegations concerning HSBC's liability under the Act linger in the amended complaint, he has disavowed any such claims. (Am. Compl. ¶¶ 15, 22, 25, 26, 32; Plaintiff's memorandum of law, pp. 1-5.) Since Erdman has repudiated those claims, this Court does not need to address whether they are preempted.

5

elements. He alleges that he executed a contract with HSBC and that he performed his duty under the contract. (Am. Compl. ¶¶ 30-31.) He alleges that HSBC contracted to take "no further adverse action" and that his credit would not reflect default, late payment or amounts due. (Id.) He further alleges that HSBC breached the contract by selling his account and representing that he defaulted on the debt. (Id. ¶ 32.) Finally, he alleges that as result of the breach he was, inter alia, forced to defend a lawsuit and denied credit. (Id. ¶ 33.) Accepting his allegations as true, Erdman's claim is "plausible on its face." Iqbal, 129 S.Ct. at 1945.

HSBC also argues that Erdman's claim is time-barred because, again, it is nothing more than a claim for negligence, which carries a three-year statute of limitations under New York law. N.Y. C.P.L.R. § 214 (2006).[3] But, as set forth above, Erdman has made out a claim for breach of contract, which stands on its own legs. In fact, this is the crux of Erdman's claim, rendering HSBC's reliance on Graboi v. Kibel inapposite. 432 F. Supp 572 (S.D.N.Y. 1977) (finding "where the gravamen of the cause of action is to recover damages for personal injury, the negligence and not the contract period applies"). Here, Erdman's complaint is grounded in HSBC's alleged breach, and the damages he seeks flow directly from that breach. Consequently, a six-year statute of limitations applies. N.Y. C.P.L.R. § 213(2) (2006). Since Erdman filed his claim within six years of the alleged breach, it is not time-barred. See Ely-Cruikshank Co. v. Bank of Montreal, 81 N.Y.2d 399, 599 N.Y.S.2d 501, 615 N.E.2d 985 (1993) (holding that the statute of limitations accrues from time of breach). Accordingly, HSBC's Motion to Dismiss on this claim is denied.

---

[3] New York's statutes of limitations apply to Erdman's claims. See Guaranty Trust Co. v. York, 326 U.S. 99, 108-09, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

6

**2. Emotional Distress**

To sustain a cause of action for infliction of emotional distress, a plaintiff must plead, among other elements, that he was the victim of "extreme and outrageous conduct." Howell v. N.Y. Post Co., Inc., 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350 (1993). The requirements of this rule are "rigorous, and difficult to satisfy." Id. (citing William Prosser & W. Page Keeton, Torts, § 12, 60-61 (5th ed. 1984)). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Howell, 81 N.Y.2d at 121 (quoting Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303, 448 N.E.2d 86, 461 N.Y.S.2d 232 (1983).

As an initial matter, it is axiomatic that there can be no liability in tort absent a duty of care. Espinal v. Melville Snow Contractors, Inc., 98 N.Y.2d 136, 138, 773 N.E.2d 485, 746 N.Y.S.2d 120 (2002). Erdman's emotional distress claims arise from an alleged breach of contract, which does not create a tort duty. See Hargrave v. Oki Nursery, Inc., 636 F.2d 897, 899 (2d Cir.1980) ("If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort."). Thus, Erdman cannot hold HSBC liable in tort. Further, Erdman alleges no facts that HSBC's conduct, whether intentional or negligent, was extreme and outrageous. Even if HSBC intentionally mislead Erdman and purposefully sold his debt, this behavior could not be called "atrocious" or "utterly intolerable." See Howell, 81 N.Y.2d at 121. The most extreme conduct he alleges is harassment from debt collectors. Even if this could be attributed to HSBC, it fails as a matter of law. See Conboy v. AT&T Corp., 241 F.3d 242,

258-59 (2d Cir. 2001) (finding that plaintiffs stated no claim for infliction of emotional distress where they were harassed with numerous phone calls from debt collectors). Therefore, Erdman's second and fourth causes of action, alleging intentional and negligent infliction of emotional distress, must be dismissed.

### 3. General Business Law § 349[4]

GBL § 349 is a New York State consumer protection statute making deceptive acts or practices in the conduct of business unlawful. To state a claim under GBL § 349, a plaintiff must allege that: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result. Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009). "'Deceptive practices' are acts which are dishonest or misleading in a material respect." Id. "'Deceptive acts' are defined objectively . . . as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." Id.

Construed liberally, Erdman alleges that HSBC dishonestly induced him to settle his debt, then sold the balance of the debt to third parties, thereby lowering his credit score, which allowed HSBC to extract a higher interest rate from him on a subsequent loan. (Am. Compl. ¶¶ 24, 41-42.) Taken as true, Erdman states a claim that HSBC violated GBL § 349. This is an act or practice that could mislead a reasonable consumer. HSBC argues that GBL § 349 does not apply because the conduct involved a single private transaction

---

[4] HSBC argues that this claim is time-barred by a three-year statute of limitations. The limitations period begins to accrue when "the plaintiff has *been injured* by a deceptive trade act or practice in violation of the statute." Beller v William Penn Life Ins. Co. of N.Y., 8 A.D.3d 310, 314, 778 N.Y.S.2d 82 (2004) (emphasis added). However, this Court has insufficient facts to determine when Erdman was first injured by the alleged violation. As such, his cause of action cannot be dismissed on statute of limitations grounds.

and is therefore not "consumer-oriented." However, such a practice, if factual, could potentially affect similarly situated customers and should therefore not be dismissed on these grounds. See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26-27, 623 N.Y.S.2d 529, 647 N.E.2d 741(1995) (observing that if a practice could affect other customers, it is not a unique, "single-shot" transaction). Further, Erdman has adequately pled damages resulting from this alleged violation. Accordingly, this claim withstands HSBC's Motion to Dismiss.

4.     Fraud[5]

A fraud claim should be dismissed as redundant when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract. Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd., 383 F. Supp. 2d 428, 452-53 (S.D.N.Y. 2003) (citing First Bank of Americas v. Motor Car Funding, Inc., 257 A.D.2d 287, 690 N.Y.S.2d 17 (1st Dep't 1999). Where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, "the fraud claim is redundant and the plaintiff's sole remedy is for breach of contract." Sudul v. Computer Outsourcing Servs., 868 F. Supp. 59, 62 (S.D.N.Y.1994); Briefstein v. P. J. Rotondo Const. Co., 8 A.D.2d 349, 351, 187 N.Y.S.2d 866 (1959) ("[T]o say that a contracting party intends when he enters an agreement not to be bound by it is not to state fraud in an actionable area, but to state a willingness to risk paying damages for breach of contract.") However, a fraud claim, in the context of a

---

[5] Erdman's fraud claim is adequately pled. He alleges, with particularity, that HSBC fraudulently misrepresented that it would take no further collection action. (Am. Compl. ¶ 40.) See Fed. R. Civ. Pro. 9(b).

simultaneous claim for failure to perform an alleged contract, may be brought if the plaintiff: (1) demonstrates there is a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation collateral or extraneous to the contract; or (3) is entitled to special damages that are unrecoverable as contract damages. Merrill Lynch & Co. Inc v. Allegheny Energy Inc., 500 F.3d 171, 183-84 (2d Cir. 2007).

Erdman alleges that HSBC fraudulently represented that his account would be marked "paid in full" and that no further adverse action would be taken. (Am. Compl. ¶ 40.) He further alleges that HSBC had no intention of settling his account and that he was subsequently "coerced" into a finance agreement with a high interest rate. (Am. Compl. ¶¶ 24, 41.) Taking these allegations as true, HSBC's intention to dishonor the contract cannot, standing alone, state a claim for fraud. It is duplicative of Erdman's breach of contract claim. However, HSBC's breach, coupled with its alleged desire and intent to use the damages of that breach against Erdman in the future, can be construed as a fraud that is collateral to the contract. Further, at this stage of the litigation, it is too early to determine if Erdman is entitled to special damages. Consequently, HSBC's Motion to Dismiss this claim is denied.

## IV. CONCLUSION

For the reasons discussed above, HSBC's Motion to Dismiss is granted as to Erdman's emotional distress claims and is denied as to his remaining causes of action.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 3) as to Plaintiff's second and fourth causes of action is GRANTED.

FURTHER, that Defendant's Motion to Dismiss (Docket No. 3) as to Plaintiff's first,

third, and fifth causes of action is DENIED.


Dated:	August 4, 2011
	Buffalo, New York

                                                    <u>/s/William M. Skretny</u>
                                                    WILLIAM M. SKRETNY
                                                        Chief Judge
                                            United States District Court